LYSSA S. ANDERSON
Nevada Bar No. 5781
KRISTOPHER J. KALKOWSKI
Nevada Bar No. 14892
KAEMPFER CROWELL
1980 Festival Plaza Drive, Suite 650
Las Vegas, Nevada  89135
Telephone:   (702) 792-7000
Fax:          (702) 796-7181
landerson@kcnvlaw.com
kkalkowski@kcnvlaw.com

RUFFIN CORDELL (*Pro Hac Vice* forthcoming)
cordell@fr.com
ADAM SHARTZER (*Pro Hac Vice* forthcoming)
shartzer@fr.com
MICHAEL J. BALLANCO (*Pro Hac Vice* forthcoming)
ballanco@fr.com
FISH & RICHARDSON P.C.
1000 Maine Ave SW, Suite 1000
Washington, DC 20024
Telephone: (202) 783-5070
Facsimile: (202) 783-2331

CHET CAMPBELL (*Pro Hac Vice* forthcoming)
cycampbell@fr.com
FISH & RICHARDSON P.C.
One Marina Park Drive
Boston, MA 02210
Telephone: (617) 542-5070
Facsimile: (617) 542-8906

***Attorneys for Plaintiff***
***DISH Network L.L.C.***

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| DISH Network L.L.C.,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>Eleven Software Inc.,<br><br>　　　　　　Defendants. | Case No.:<br><br>**COMPLAINT FOR PATENT INFRINGEMENT**<br><br>**JURY TRIAL REQUESTED** |

Plaintiff DISH Network L.L.C. ("DISH") files this Complaint against Eleven Software Inc. ("Eleven" or "Defendant") alleging patent infringement under 35 U.S.C. § 271.  DISH alleges that Eleven infringes United States Patent Nos. 11,317,285 and 12,231,884.

## THE PARTIES

1. DISH is a Colorado limited liability company having its principal place of business in Englewood, Colorado.

2. DISH is a technology company that develops, owns, and commercializes innovations in communications networks and network security, including technologies directed to secure wireless connectivity and network access management. Through sustained investment in research and development, DISH has created patented solutions that address long-standing technical problems in wireless network provisioning, including in environments involving large numbers of users, devices with limited interfaces, and centrally managed networks spanning multiple access points or locations.

3. Defendant Eleven Software Inc. is a Delaware corporation with its principal place of business at 5725 S Valley View Boulevard, Suite 5, PMB 167218, Las Vegas, Nevada 89118-3122.

4. Defendant and third-party Blueport, Inc. are competitors. DISH and Defendant operate in the same field, at least because of Defendant's relationship with Blueport.

## JURISDICTION AND VENUE

5. This is a civil action for patent infringement under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, including 35 U.S.C. § 271. This Court has original jurisdiction over this controversy under 28 U.S.C. §§ 1331 and 1338.

6. This Court has personal jurisdiction over Defendant because Defendant has a principal place of business in Nevada and because, on information and belief, Defendant has regularly and systematically transacted business in this judicial district, directly or through intermediaries, and/or committed acts of infringement in this judicial district. For example, Defendant's website, https://www.elevensoftware.com/, provides a single address at 5725 S

Valley View Boulevard, Suite 5, PMB 167218, Las Vegas, Nevada 89118-3122. Further, the Privacy Notice on Defendant's website invites customers to write to Defendant at this same location.[1] Defendant's LinkedIn page also identifies its headquarters as being located in Las Vegas, Nevada.[2] Further, on information and belief, Defendant's President and Chief Operating Officer resides in and conducts business out of Nevada.

7. Defendant's Registered Agent is Teslos Legal Corp., 13 West Main Street P.O. Box 953, Felton, Delaware, 19943.

8. Venue is proper in this judicial district under 28 U.S.C. § 1400(b) because Defendant has committed acts of infringement in this District and has a regular and established place of business in this District. On information and belief, Defendant maintains a regular and established place of business in Nevada, and Defendant has committed acts of infringement in this District, and by inducing and contributing to infringement by its customers (e.g., hotels) and end users located in this District.

## ASSERTED PATENTS

9. DISH is the owner of all right, title, and interest in U.S. Patent No. 11,317,285 (the "'285 Patent"), titled "Wireless Network Provisioning Using a Pre-shared Key." On April 26, 2022, the '285 Patent was duly and legally issued by the United States Patent and Trademark Office ("USPTO"). The '285 Patent issued from Application No. 17/028,401 filed on September 22, 2020, and claims priority to Provisional Application No. 62/908,221, filed on September 30, 2019, and Provisional Application No. 62/986,255, filed on March 6, 2020. A true and correct copy of the '285 Patent is attached as Exhibit A to this Complaint.

---

[1] *See* https://www.elevensoftware.com/privacy (last visited June 12, 2026).

[2] https://www.linkedin.com/company/elevensoftware/about/ (last visited June 12, 2026).

10. DISH is the owner of all right, title, and interest in U.S. Patent No. 12,231,884 (the "'884 Patent"), titled "Wireless Network Provisioning Using a Pre-shared Key."  On February 18, 2025, the '884 Patent was duly and legally issued by the USPTO.  The '884 Patent issued from Application No. 17/707,139 filed on March 29, 2022, which claims priority to Application No. 17/028,401 filed on September 22, 2020, which claims priority to Provisional Application No. 62/908,221, filed on September 30, 2019, and Provisional Application No. 62/986,255, filed on March 6, 2020.  A true and correct copy of the '884 Patent is attached as Exhibit B to this Complaint.

11. The '285 and '884 Patents are herein referred to as the "Asserted Patents."

12. DISH possesses the exclusive right of recovery for past, present, and future infringement of the Asserted Patents.

13. DISH has not licensed the Asserted Patents to Defendant or otherwise authorized Defendant to practice any of the claims of the Asserted Patents.

## THE TECHNOLOGY OF THE ASSERTED PATENTS

14. The Asserted Patents are directed to systems and methods for secure wireless network provisioning.

15. In the "Background" section, the Asserted Patents explain that "[e]nabling a wireless device for wireless network access can present challenges."[3]  As one example, the Asserted Patents describe a conventional Wi-Fi arrangement where a user inputs a pre-shared key ("PSK") and a wireless router determines whether to provide access to the wireless device.[4]  The

---

[3] '285 Patent at 1:17-18.

[4] '285 Patent at 1:30-35 ("In a conventional pre-shared key (PSK) arrangement, such as for a home Wi-Fi network, a user may perform an initial configuration of an access point (AP) such as a wireless router. The user may create a PSK, such as a string of characters that the user can readily remember or otherwise store (e.g., write down), and provide the PSK to the AP.").

Asserted Patents explain that "[h]owever, many situations exist where it could be detrimental to have a same PSK used across wireless devices associated with different users' devices."[5] For example, "[i]f multiple users all use the same PSK, it may be possible for one user's device to intercept and decode another user's device's communications with the wireless network."[6] "Further, limiting access to the wireless network for users that have already received the PSK may be cumbersome, such as after a previously-authorized user has checked out of a hotel or otherwise needs to be restricted from accessing the wireless network. In such a situation, an administrator may need to manually whitelist or blacklist individual MAC addresses that are permitted to access the wireless network or are blocked from accessing the wireless network, respectively."[7]

16. The Asserted Patents disclose embodiments where a cloud-based provisioning system, distinct from an access point (e.g., a wireless router), determines whether a wireless device may access the wireless network.[8]

17. Figure 1 of the Asserted Patents "illustrates an embodiment of a wireless pre-shared key provisioning system 100"[9] with a specific structure that includes "cloud-based provisioning system 110; PMK (Pairwise Master Key) database 112; wireless network access profile database 114 ("profile database 114"); registration system 120; Internet 130; access point 140; wireless

---

[5] '285 Patent at 1:44-46.

[6] '285 Patent at 1:48-51.

[7] '285 Patent at 1:51-58.

[8] '285 Patent at 6:66-7:2 ("the determination of whether access [to the wireless device] is performed by cloud-based provisioning system 110"); '285 Patent at 6:51-60 ("[T]he wireless network access profile may include: a permissible time range for access; a permissible date range for access; whitelisted and/or blacklisted MAC addresses; an amount of bandwidth; a total amount of uplink and/or downlink data permissible within a given time period (e.g., one month); permissible or impermissible uses (e.g., no video streaming); whether further authentication is needed, a level of access, which networks are permitted to be accessed, etc.").

[9] '285 Patent at 4:5-7.

device 150; wireless device 154; and IoT Device 156."[10]



**FIG. 1**

18.　　Figure 3 of the Asserted Patents, reproduced below, depicts a method in which the wireless device initiates access using information derived from a pre-shared key, the access point forwards received values to a cloud-based provisioning system for matching against stored access profiles, and—upon a match—the cloud-based provisioning system provides a pairwise master key (PMK) that the access point uses to establish an encrypted session and grant network access.[11] This approach advantageously centralizes authorization decisions,[12] scales to many devices/users, and improves security by avoiding transmission of the PSK between the wireless device and the access point.[13]

---

[10] '285 Patent at 4:8-12.

[11] '285 Patent at 9:11-13:8

[12] '285 Patent at 2:22-24, 3:5-6, 3:50-60, 7:10-13.

[13] '285 Patent at 8:54-57 ("For example, an entity, such as a property rental company, may be able to centrally manage guest access across many properties via cloud-based provisioning system 110.").



FIG. 3

19.    The Asserted Patents offer further technical improvements over (i) wireless provisioning systems that require the wireless device to install certificates and (ii) wireless provisioning systems that require a user interface on the wireless device.  For example, the Asserted Patents disclose embodiments that do not require the wireless device "to be able to perform a certificate-based arrangement, such as Hotspot 2.0."[14]  The Asserted Patents also do not

---

[14] '285 Patent at 1:18-20.

require "a user to supply credentials via the wireless device once connected with the wireless network," explaining that such systems are not feasible for devices that lack a user interface, such as "many Internet-of-Things (IoT) devices, such as sensor devices."[15]

20.    Consistent with the problems addressed being rooted in wireless network provisioning, the Asserted Patents' solutions are also inextricably rooted in technology, are tied to a specific structure of various components, and cannot be performed with pen and paper or in the human mind.  Using pen and paper would ignore the stated purposes of the Asserted Patents and the problems they were specifically designed to address, which arose in, for example, the context of needing an improved wireless network provisioning using pre-shared keys.  Doing so would also run counter to the inventors' detailed description of the inventions and the language of the claims and be a practical impossibility.  Thus, the Asserted Patents disclose and claim a specific technological solution to a specific technological problem.

21.    The '285 Patent discloses and claims inventive concepts.  As one illustrative example, at the time the inventive concepts were conceived, it was not common or conventional for a wireless network provisioning system to be distinct from the access point.  More specifically, it was not common or conventional for a cloud-based provisioning system, distinct from the access point, to: (1) create a plurality of wireless network access profiles that indicate a plurality of PSKs and a plurality of bandwidth restrictions; (2) receive the first value from the access point via the Internet; (3) create a plurality of values based on the plurality of PSKs of the plurality of wireless network access profiles; (4) identify a second value of the plurality of values that matches the received first value; (5) and transmit, to the access point via the Internet, a pairwise master key (PMK) based on the PSK of the wireless network access profile of the plurality of wireless network

---

[15] '285 Patent at 1:20-29.

KAEMPFER CROWELL
1980 Festival Plaza Drive
Suite 650
Las Vegas, Nevada  89135

access profiles used to generate the second value that matches the transmitted first value, wherein: the PMK is used to provide network access to the wireless device for a time period indicated by the wireless network access profile used to generate the second value that matches the transmitted first value; and (6) bandwidth for the wireless device is restricted based on a bandwidth restriction of the plurality of bandwidth restrictions mapped to the PSK in the wireless network access profile.

22.    The '884 Patent also discloses and claims inventive concepts.  As an illustrative example, at the time the inventive concepts were conceived, it was not common or conventional to perform a method for wireless network provisioning that includes: (1) storing, by a cloud-based provisioning system, a plurality of wireless network access profiles, wherein each wireless network access profile of the plurality of wireless network access profiles comprises: a pre-shared key (PSK); and an SSID of a wireless network; (2) receiving, by an access point, from a wireless device, a message integrity code (MIC) and a station announcement message (SNonce), wherein the MIC and the SNonce were created by the wireless device using the PSK and the SSID; (3) determining, by the access point, that the MIC and the SNonce is to be transmitted to the cloud-based provisioning system to determine whether network access is to be granted; (4) transmitting, by the access point, the MIC, the SNonce, and an access point announcement message (ANonce) to the cloud-based provisioning system based on the determining, wherein the cloud-based provisioning system is remotely located from the access point and the access point communicates with the cloud-based provisioning system via the Internet; (5) receiving, by the cloud-based provisioning system, the MIC, the SNonce, and the ANonce; (6) calculating, by the cloud-based provisioning system, calculated MICs for multiple wireless network access profiles of the plurality of wireless network access profiles, wherein calculating is performed using: the ANonce and the SNonce from the access point and the PSK from a wireless network access profile of the plurality of wireless network access profiles; (7) determining, by the cloud-based provisioning system, that

KAEMPFER CROWELL
1980 Festival Plaza Drive
Suite 650
Las Vegas, Nevada  89135

a first calculated MIC for a first wireless network access profile of the multiple wireless network access profiles does not match the received MIC; (8) determining, by the cloud-based provisioning system, that a second calculated MIC for a second wireless network access profile of the multiple wireless network access profiles matches the received MIC; (9) transmitting, by the cloud-based provisioning system, a pairwise master key (PMK) for the second wireless network access profile to the access point in response to determining that the calculated MIC for the second wireless network access profile matches the received MIC; (10) receiving, by the access point, the PMK from the cloud-based provisioning system; (11) establishing, by the access point, an encrypted communication session with the wireless device using the PMK; and (12) granting, by the access point, network access to the wireless device based on the PMK.

## **THE ACCUSED PRODUCT**

23.    As described further below, Defendant operates and sells access to a cloud-based system known as "ElevenOS," which includes "Personal Pass Key" (collectively, "Accused Product"). ElevenOS is a cloud-based system that includes servers that perform wireless network provisioning in conjunction with access points and wireless devices.

24.    Defendant claims that it "delivers enterprise-grade Wi-Fi management software to ensure hotel brands deliver the best connection every time, at every property."[16]

25.    Defendant claims that ElevenOS's "Personal Pass Key" "enables property managers and support staff to easily control when and how residents can access the network simply by scheduling them in Site Manager, Eleven's intuitive, web-based application for property managers."[17]

---

[16] Ex. C, Transform Guest Connectivity with AI-Powered Wi-Fi (Apr. 9, 2026).

[17] Ex. D, Eleven Expands Hardware Integrations for Multifamily Solution, Personal Pass Key (Sept. 6, 2022) at 3.

KAEMPFER CROWELL
1980 Festival Plaza Drive
Suite 650
Las Vegas, Nevada  89135

26. In describing the "magic behind the Personal Pass Key experience," Defendant asserted that it relies on "a purpose-built service that stores all keys enabled for an SSID and checks that the key entered by a user attempting to join the network is a valid one."[18]

27. Defendant claims ElevenOS's "Enterprise Device Manager" is a "highly available cloud-based 802.1x authentication service for IoT devices" that allows administrators to "add one device or bulk upload an entire list with defined attributes like authentication type, credentials, bandwidth speeds, and more."[19]

28. On information and belief, Defendant began making, using, offering for sale, or selling ElevenOS, including Personal Pass Key and Enterprise Device Manager, at least as early as July 20, 2021.[20]

### DEFENDANT'S KNOWLEDGE OF THE ASSERTED PATENTS

29. On April 30, 2020, Defendant received a copy of U.S. Provisional Application No. 62/986,255, to which the Asserted Patents claim priority.

30. On June 13, 2025, DISH sent a letter to Defendant, notifying it that Defendant's software products and services infringe the Asserted Patents.

31. On information and belief, Defendant had knowledge of the Asserted Patents and its infringement of those patents at least as early as June 13, 2025.

### COUNT I:  INFRINGEMENT OF THE '285 PATENT

32. DISH incorporates herein by reference the allegations found in paragraphs 1-31.

33. The '285 Patent is valid, enforceable, and was duly issued on April 26, 2022, in full compliance with Title 35 of the United States Code.

---

[18] Ex. E, Unlock a Better Wi-Fi Connectivity Experience for Residents (Aug. 31, 2021) at 3.

[19] Ex. F, Enterprise Device Manager Datasheet at 1.

[20] Ex. G, How to Deliver Home-like Wi-Fi with Enterprise Level Network Control (July 20, 2021).

34.     On information and belief, Defendant has been and is now directly infringing the '285 Patent in violation of 35 U.S.C. § 271(a) at least by making, using, selling, offering for sale, and/or importing into the United States, the Accused Product, which practices one or more claims of the '285 Patent, including at least claim 1.  For example, Defendant has used the Accused Product in the United States, at a minimum for internal testing and development and for internal corporate communication, thereby directly infringing at least claim 1 of the '285 Patent.

35.     On information and belief, Defendant has been and is now actively inducing infringement of the '285 Patent in violation of 35 U.S.C. § 271(b) by knowingly and intentionally inducing others, including for example Defendant's customers and end-users of the Accused Product, to directly infringe the patent.

36.     For example, Defendant's website includes a "Resource Center" that hosts literature directed towards customers and end-users detailing the Accused Product.[21]

37.     On information and belief, Defendant had knowledge of the '285 Patent and knowledge that it infringes one or more claims of the '285 Patent via the Accused Product at least as early as June 13, 2025.  Defendant also had knowledge of its infringement of one or more claims of the '285 Patent as of at least the date on which this Complaint was served.  On information and belief, despite having such knowledge, Defendant continues to knowingly engage in its infringing conduct, including by directly infringing the '285 Patent and by actively inducing infringement of the '285 Patent by others.

38.     On information and belief, Defendant has been and is now contributing to the direct infringement of the '285 Patent by others, including for example Defendant's customers and end-users of the Accused Product, in violation of 35 U.S.C. § 271(c).  Acts by Defendant that have

---

[21] *See, e.g.*, https://www.elevensoftware.com/resources.

KAEMPFER CROWELL
1980 Festival Plaza Drive
Suite 650
Las Vegas, Nevada  89135

contributed to the infringement of others include, but are not limited to, selling access to the Accused Product.  The Accused Product includes distinct components that are especially made for or adapted for use to infringe at least claim 1 of the '285 Patent, and are not a staple article of commerce and are not suitable for substantial non-infringing use.  On information and belief, Defendant was aware that the Accused Product includes components especially made or adapted for use in an infringement of the '285 Patent prior to the filing of this Complaint, and became further aware of this fact when this Complaint was served.

39.     Claim 1 of the '285 Patent recites (brackets added):

**[1pre]** A method for wireless network provisioning using a pre-shared key (PSK), the method comprising:
**[1a]** creating, at a cloud-based provisioning system, a plurality of wireless network access profiles that indicate: 1) a plurality of PSKs; 2) a plurality of bandwidth restrictions; and 3) a plurality of time periods for which network access is permitted, wherein the cloud-based provisioning system is an internet-connected server system distinct from a plurality of access points that are in communication with the cloud-based provisioning system;
**[1b]** receiving, by an access point of the plurality of access points, from a wireless device, a first value that is based at least in part on the PSK;
**[1c]** transmitting, by the access point, the first value to the cloud-based provisioning system via the Internet;
**[1d]** creating, by the cloud-based provisioning system, a plurality of values based on the plurality of PSKs of the plurality of wireless network access profiles;
**[1e]** identifying, by the cloud-based provisioning system a second value of the plurality of values that matches the transmitted first value;
**[1f]** providing, by the cloud-based provisioning system to the access point via the Internet, a pairwise master key (PMK) based on the PSK of the wireless network access profile of the plurality of wireless network access profiles used to generate the second value that matches the transmitted first value; and
**[1g]** providing, by the access point, network access to the wireless device using the PMK received from the cloud-based provisioning system for a time period indicated by the wireless network access profile used to generate the second value that matches the transmitted first value in accordance with a bandwidth restriction of the plurality of bandwidth restrictions mapped to the PSK in the wireless profile stored by the cloud-based provisioning system

40.     As used in the following analysis, references to the Accused Product should be understood to include, for example, methods to control the Accused Product performed by Defendant and/or others involved with Defendant's induced and contributory infringement, as

KAEMPFER CROWELL
1980 Festival Plaza Drive
Suite 650
Las Vegas, Nevada  89135

indicated by the context.

41.    On information and belief, the Accused Product performs a method for wireless network provisioning using a pre-shared key (PSK) as recited in element 1[pre] of the '285 Patent.

42.    For example, Defendant asserted that "[t]he Personal Pass Key experience was purpose-built for the multifamily industry, where the desire for an easy resident Wi-Fi experience is often in conflict with operators' need for control and security. As a cloud-based service, EKMS [i.e., Eleven Key Matching Service] enables network operators to scale with ease and does away with additional servers, licensing, maintenance and monitoring."[22]

43.    On information and belief, the Accused Product performs creating, at a cloud-based provisioning system, a plurality of wireless network access profiles that indicate: 1) a plurality of PSKs; 2) a plurality of bandwidth restrictions; and 3) a plurality of time periods for which network access is permitted, wherein the cloud-based provisioning system is an internet-connected server system distinct from a plurality of access points that are in communication with the cloud-based provisioning system, in a manner that satisfies element [1a] of the '285 Patent.

44.    For example, Defendant asserted that, "[w]hen a resident device asks to join the network, the on-premise hardware sends the encrypted key to Eleven's cloud-native . . . Key Matching Service (EKMS) which checks the key against a list of authorized keys, granting access only when a match is found–no captive portal required."[23]

45.    Defendant further asserted that "residents are gracefully off-boarded and their key is disabled when their access end date passes, with no user or administrator action required."[24]

---

[22] Ex. D, Eleven Expands Hardware Integrations for Multifamily Solution, Personal Pass Key (Sept. 6, 2022) at 3.

[23] Ex. D, Eleven Expands Hardware Integrations for Multifamily Solution, Personal Pass Key (Sept. 6, 2022) at 2.

[24] Ex. D, Eleven Expands Hardware Integrations for Multifamily Solution, Personal Pass Key (Sept. 6, 2022) at 3. *See also, e.g.,* Unlock a Better Wi-Fi Connectivity Experience for Residents

KAEMPFER CROWELL
1980 Festival Plaza Drive
Suite 650
Las Vegas, Nevada  89135

46. Defendant also claims that it provides "Easy Device Onboarding: Quickly add one device or bulk upload an entire list with defined attributes like authentication type, credentials, bandwidth speeds, and more."[25]

47. On information and belief, the Accused Product performs receiving, by an access point of the plurality of access points, from a wireless device, a first value that is based at least in part on the PSK, in a manner that satisfies element [1b] of the '285 Patent.

48. For example, Defendant asserted that its "Personal Pass Key solution . . . provides a unique Wi-Fi pass key to each resident" and that the "key is all the resident needs to get any Wi-Fi enabled device onto their Personal Area Network (PAN)."[26]

49. On information and belief, the Accused Product performs transmitting, by the access point, the first value to the cloud-based provisioning system via the Internet, in a manner that satisfies element [1c] of the '285 Patent.

50. For example, Defendant asserted that "[w]hen a resident device asks to join the network, the on-premise hardware sends the encrypted key to Eleven's cloud-native . . . Key Matching Service (EKMS) which checks the key against a list of authorized keys, granting access only when a match is found–no captive portal required."[27]

51. On information and belief, the Accused Product performs creating, by the cloud-based provisioning system, a plurality of values based on the plurality of PSKs of the plurality of

---

(Aug. 31, 2021) at 1 ("[P]roperty managers enter the resident with their move-in and move-out dates into ElevenOS. That way, Wi-Fi access automatically starts and ends on the residents' move-in and move-out dates.").

[25] Ex. F, Enterprise Device Manager Datasheet at 1.

[26] Ex. D, Eleven Expands Hardware Integrations for Multifamily Solution, Personal Pass Key (Sept. 6, 2022) at 1-2.

[27] Ex. D, Eleven Expands Hardware Integrations for Multifamily Solution, Personal Pass Key (Sept. 6, 2022) at 2.

wireless network access profiles, in a manner that satisfies element [1d] of the '285 Patent. For example, on information and belief, U.S. Patent No. 11,917,407 (the "'407 Patent") filed by Defendant describes aspects of Defendant's software, and Defendant has identified that the Accused Product includes technology covered by the '407 Patent. [28]

52.    The '407 Patent provides, for example, that "[t]he key matching service 106 may use this information to generate the MIC for each PMK and/or PSK and match the generated MIC to a set of valid keys that are valid for authentication. As described further with respect to FIG. 2A, the key matching service 106 may allocate the valid keys among multiple computation elements to search for a match with the PMK and/or PSK generated from the ANonce value, Frame 2 information, and/or other information (e.g., the MAC addresses of the access point 104 and/or client device 102, and/or the SSID of the LAN)."[29]

53.    As another example, Defendant asserted that "[t]he magic behind the Personal Pass Key experience is a purpose-built service that stores all keys enabled for an SSID and checks that the key entered by a user attempting to join the network is a valid one. Instead of the hardware itself storing the one key that unlocks it, our service enables multiple keys to be used. The Eleven Key Matching Service (EKMS) is a cloud-based solution …."[30]

54.    On information and belief, the Accused Product performs identifying by the cloud-based provisioning system a second value of the plurality of values that matches the transmitted first value, in a manner that satisfies element [1e] of the '285 Patent.

55.    For example, Defendant's '407 Patent provides that "[t]he key matching service 106 may use this information to generate the MIC for each PMK and/or PSK and match the

[28] Ex. I, ElevenOS Patent Marking Page.

[29] Ex. H, '407 Patent at 4:10-20.

[30] Ex. E, Unlock a Better Wi-Fi Connectivity Experience for Residents (Aug. 31, 2021) at 3.

generated MIC to a set of valid keys that are valid for authentication. As described further with respect to FIG. 2A, the key matching service 106 may allocate the valid keys among multiple computation elements to search for a match with the PMK and/or PSK generated from the ANonce value, Frame 2 information, and/or other information (e.g., the MAC addresses of the access point 104 and/or client device 102, and/or the SSID of the LAN)."[31]

56.      As another example, Defendant asserted that "when a resident device asks to join the network, the on-premise hardware sends the encrypted key to Eleven's cloud-native . . . Key Matching Service (EKMS) which checks the key against a list of authorized keys, granting access only when a match is found–no captive portal required."[32]

57.      On information and belief, the Accused Product performs providing, by the cloud-based provisioning system to the access point via the Internet, a pairwise master key (PMK) based on the PSK of the wireless network access profile of the plurality of wireless network access profiles used to generate the second value that matches the transmitted first value, in a manner that satisfies element [1f] of the '285 Patent.

58.      For example, Defendant's '407 Patent provides that "[t]he client device 102 may be provided with a pre-shared key (PSK) for establishing a connection with the access point 104. The access point 104 may support multiple PSKs (e.g., for the same SSID).  For example, different PSKs may be used by different client devices 102 and/or groups of client devices 102 to access the network of the access point 104. In some embodiments, the PSK may be used to generate a pairwise master key (PMK).  For example, the PMK may be generated based on the PSK and the

---

[31] Ex. H, '407 Patent at 4:10-20.

[32] Ex. D, Eleven Expands Hardware Integrations for Multifamily Solution, Personal Pass Key (Sept. 6, 2022) at 2.

KAEMPFER CROWELL
1980 Festival Plaza Drive
Suite 650
Las Vegas, Nevada  89135

SSID of the access point 104."[33]

59.     As another example, Defendant asserted that "[i]n the case of multiple SSIDs, ElevenOS manages the WPA-2 key for each. With one SSID, ElevenOS manages a pool of WPA-2 keys that are allowed to access the network."[34]

60.     Defendant further asserted that "when a resident device asks to join the network, the on-premise hardware sends the encrypted key to Eleven's cloud-native . . . Key Matching Service (EKMS) which checks the key against a list of authorized keys, granting access only when a match is found–no captive portal required."[35]

61.     On information and belief, the Accused Product performs providing, by the access point, network access to the wireless device using the PMK received from the cloud-based provisioning system for a time period indicated by the wireless network access profile used to generate the second value that matches the transmitted first value in accordance with a bandwidth restriction of the plurality of bandwidth restrictions mapped to the PSK in the wireless profile stored by the cloud-based provisioning system, in a manner that satisfies element [1g] of the '285 Patent.

62.     For example, Defendant's '407 Patent provides that, "[a]t 120 of the process 100, the access point 104 may send a result message (e.g., referred to as Frame 3) to the client device 102. The result message may indicate whether the match was successful or not.  If the match was successful, the result message may include additional information, such as a group temporal key (GTK), which may be generated based on a group master key (GMK)."[36]

---

[33] Ex. H, '407 Patent at 3:33-42.

[34] Ex. J, ElevenOS Personal Pass Key Overview at 1.

[35] Ex. D, Eleven Expands Hardware Integrations for Multifamily Solution, Personal Pass Key (Sept. 6, 2022) at 2.

[36] Ex. H, '407 Patent at 4:32-39.

KAEMPFER CROWELL
1980 Festival Plaza Drive
Suite 650
Las Vegas, Nevada  89135

63. As another example, Defendant asserted that "ElevenOS automatically onboards new residents when it's time, collecting their acceptance of terms, creating and delivering new pass keys and establishing their PAN. Similarly, residents are gracefully off-boarded and their key is disabled when their access end date passes, with no user or administrator action required."[37]

64. As a further example, Defendant claims that its Enterprise Device Manager enables administrators to "[q]uickly add one device or bulk upload an entire list with defined attributes like authentication type, credentials, bandwidth speeds, and more."[38]

65. Defendant's infringement is literal, under the doctrine of equivalents, or both.

66. Defendant has committed infringing acts without authorization, consent, permission, or a license from DISH.

67. Defendant's infringement has been, and continues to be, willful. Despite having had knowledge of its infringement, Defendant has continued its infringing activities.

68. Alternatively, Defendant was willfully blind to the '285 Patent and to its infringement. Defendant subjectively believed there was a high probability that the Accused Product practiced patented technology, including because Defendant was put on notice of U.S. Provisional Application No. 62/986,255, to which the '285 Patent claims priority and whose disclosure closely matches the operation of the Accused Product. Defendant nevertheless took deliberate actions to avoid learning of the '285 Patent and/or to avoid confirming infringement.

69. Despite its knowledge and/or willful blindness, Defendant continued to make, use, sell, offer for sale, import, supply, and/or encourage use of the Accused Product without authorization. Defendant's continued infringement after notice, and its deliberate avoidance of

---

[37] Ex. D, Eleven Expands Hardware Integrations for Multifamily Solution, Personal Pass Key (Sept. 6, 2022) at 2–3.

[38] Ex. F, Enterprise Device Manager Datasheet at 1.

KAEMPFER CROWELL
1980 Festival Plaza Drive
Suite 650
Las Vegas, Nevada  89135

information confirming infringement, render its infringement willful and support an award of enhanced damages under 35 U.S.C. § 284.

70. Defendant will continue to infringe the '285 Patent, causing irreparable harm to DISH for which there is no adequate remedy at law unless enjoined by this Court. Defendant's infringement has caused and continues to cause irreparable harm to DISH in the form of loss of business opportunities, lost sales, loss of market share and loss of goodwill.

71. As a result of Defendant's infringement of the '285 Patent, DISH has suffered and is owed no less than a reasonable royalty under 35 U.S.C. § 284 as a remedy.

72. To the extent an obligation under 35 U.S.C. § 287 exists, DISH has complied with that obligation.

73. Nevertheless, in accordance with 35 U.S.C. § 287, DISH provided notice of infringement to Defendant on June 13, 2025, and licensee RoamingiQ hosts a virtual marking page identifying the '285 Patent in connection with its practicing products.[39]

### COUNT II: INFRINGEMENT OF THE '884 PATENT

74. DISH incorporates herein by reference the allegations found in paragraphs 1-73.

75. The '884 Patent is valid, enforceable, and was duly issued on February 18, 2025, in full compliance with Title 35 of the United States Code.

76. On information and belief, Defendant has been and is now directly infringing the '884 Patent in violation of 35 U.S.C. § 271(a) at least by making, using, selling, offering for sale, and/or importing into the United States, the Accused Product, which practices one or more claims of the '884 Patent, including at least claim 1. For example, Defendant has used the Accused Product in the United States, at a minimum for internal testing and development and for internal

---

[39] *See* https://roamingiq.com/about/.

corporate communication, thereby directly infringing at least claim 1 of the '884 Patent.

77.    On information and belief, Defendant has been and is now actively inducing infringement of the '884 Patent in violation of 35 U.S.C. § 271(b) by knowingly and intentionally inducing others, including for example Defendant's customers and end-users of the Accused Product, to directly infringe the patent.

78.    For example, Defendant's website includes a "Resource Center" that hosts literature directed towards customers and end-users detailing the Accused Product.[40]

79.    On information and belief, Defendant had knowledge of the '884 Patent and knowledge that it infringes one or more claims of the '884 Patent via the Accused Product at least as early as June 13, 2025.  Defendant also had knowledge of its infringement of one or more claims of the '884 Patent as of at least the date on which this Complaint was served.  On information and belief, despite having such knowledge, Defendant continues to knowingly engage in its infringing conduct, including by directly infringing the '884 Patent and by actively inducing infringement of the '884 Patent by others.

80.    On information and belief, Defendant has been and is now contributing to the direct infringement of the '884 Patent by others, including for example Defendant's customers and end-users of the Accused Product, in violation of 35 U.S.C. § 271(c).  Acts by Defendant that have contributed to the infringement of others include, but are not limited to, selling access to the Accused Product.  The Accused Product includes distinct components that are especially made for or adapted for use to infringe at least claim 1 of the '884 Patent, and are not a staple article of commerce and are not suitable for substantial non-infringing use.  On information and belief, Defendant was aware that the Accused Product includes components especially made or adapted

---

[40] *See* https://www.elevensoftware.com/resources.

KAEMPFER CROWELL
1980 Festival Plaza Drive
Suite 650
Las Vegas, Nevada  89135

for use in an infringement of the '884 Patent prior to the filing of this Complaint, and became further aware of this fact when this Complaint was served.

81.    Claim 1 of the '884 Patent recites (brackets added):

**[1pre]** A method for wireless network provisioning, the method comprising:
**[1a]** storing, by a cloud-based provisioning system, a plurality of wireless network access profiles, wherein each wireless network access profile of the plurality of wireless network access profiles comprises: a pre-shared key (PSK); and an SSID of a wireless network;
**[1b]** receiving, by an access point, from a wireless device, a message integrity code (MIC) and a station announcement message (SNonce), wherein the MIC and the SNonce were created by the wireless device using the PSK and the SSID;
**[1c]** determining, by the access point, that the MIC and the SNonce is to be transmitted to the cloud-based provisioning system to determine whether network access is to be granted;
**[1d]** transmitting, by the access point, the MIC, the SNonce, and an access point announcement message (ANonce) to the cloud-based provisioning system based on the determining, wherein the cloud-based provisioning system is remotely located from the access point and the access point communicates with the cloud-based provisioning system via the Internet;
**[1e]** receiving, by the cloud-based provisioning system, the MIC, the SNonce, and the ANonce;
**[1f]** calculating, by the cloud-based provisioning system, calculated MICs for multiple wireless network access profiles of the plurality of wireless network access profiles, wherein calculating is performed using: the ANonce and the SNonce from the access point and the PSK from a wireless network access profile of the plurality of wireless network access profiles;
**[1g]** determining, by the cloud-based provisioning system, that a first calculated MIC for a first wireless network access profile of the multiple wireless network access profiles does not match the received MIC;
**[1h]** determining, by the cloud-based provisioning system, that a second calculated MIC for a second wireless network access profile of the multiple wireless network access profiles matches the received MIC;
**[1i]** transmitting, by the cloud-based provisioning system, a pairwise master key (PMK) for the second wireless network access profile to the access point in response to determining that the calculated MIC for the second wireless network access profile matches the received MIC;
**[1j]** receiving, by the access point, the PMK from the cloud-based provisioning system;
**[1k]** establishing, by the access point, an encrypted communication session with the wireless device using the PMK; and
**[1l]** granting, by the access point, network access to the wireless device based on the PMK.

82.    As used in the following analysis, references to the Accused Product should be understood to include, for example, methods to control the Accused Product performed by Defendant and/or others involved with Defendant's induced and contributory infringement, as

KAEMPFER CROWELL
1980 Festival Plaza Drive
Suite 650
Las Vegas, Nevada 89135

indicated by the context.

83.    On information and belief, the Accused Product performs a method for wireless network provisioning as recited in element 1[pre] of the '884 Patent.

84.    For example, Defendant asserted that "[t]he Personal Pass Key experience was purpose-built for the multifamily industry, where the desire for an easy resident Wi-Fi experience is often in conflict with operators' need for control and security. As a cloud-based service, EKMS enables network operators to scale with ease and does away with additional servers, licensing, maintenance and monitoring."[41]

85.    On information and belief, the Accused Product performs storing, by a cloud-based provisioning system, a plurality of wireless network access profiles, wherein each wireless network access profile of the plurality of wireless network access profiles comprises: a pre-shared key (PSK); and an SSID of a wireless network, in a manner that satisfies element [1a] of the '884 Patent.

86.    For example, Defendant asserted that "when a resident device asks to join the network, the on-premise hardware sends the encrypted key to Eleven's cloud-native . . . Key Matching Service (EKMS) which checks the key against a list of authorized keys, granting access only when a match is found–no captive portal required."[42]

87.    Defendant further asserted that "[o]n move-in day, an onboarding email with a link to the network onboarding page is automatically sent to new residents. From there, the resident simply accepts the terms of use and then receives the SSID and their own, easy to remember, Wi-Fi password (aka Personal Pass Key) to access the Wi-Fi. These steps are all driven by

[41] Ex. D, Eleven Expands Hardware Integrations for Multifamily Solution, Personal Pass Key (Sept. 6, 2022) at 3.

[42] Ex. D, Eleven Expands Hardware Integrations for Multifamily Solution, Personal Pass Key (Sept. 6, 2022) at 2.

ElevenOS."[43]

88.    On information and belief, the Accused Product performs receiving, by an access point, from a wireless device, a message integrity code (MIC) and a station announcement message (SNonce), wherein the MIC and the SNonce were created by the wireless device using the PSK and the SSID, in a manner that satisfies element [1b] of the '884 Patent.

89.    For example, Defendant's '407 Patent provides that:[44]



**FIGURE 1**

90.    On information and belief, the Accused Product performs determining, by the access point, that the MIC and the SNonce is to be transmitted to the cloud-based provisioning system to determine whether network access is to be granted, in a manner that satisfies element [1c] of the '884 Patent.

91.    For example, Defendant asserted that "[w]hen a resident device asks to join the network, the on-premise hardware sends the encrypted key to Eleven's cloud-native . . . Key Matching Service (EKMS) which checks the key against a list of authorized keys, granting access

---

[43] Ex. E, Unlock a Better Wi-Fi Connectivity Experience for Residents (Aug. 31, 2021) at 1.

[44] Ex. H, '407 Patent at Fig. 1 (highlighting added); *see also, e.g., id.* at 3:43-4:20.

KAEMPFER CROWELL
1980 Festival Plaza Drive
Suite 650
Las Vegas, Nevada  89135

only when a match is found–no captive portal required."[45]

92.   On information and belief, the Accused Product performs transmitting, by the access point, the MIC, the SNonce, and an access point announcement message (ANonce) to the cloud-based provisioning system based on the determining, wherein the cloud-based provisioning system is remotely located from the access point and the access point communicates with the cloud-based provisioning system via the Internet, in a manner that satisfies element [1d] of the '884 Patent.

93.   For example, Defendant asserted that "[t]he magic behind the Personal Pass Key experience is a purpose-built service that stores all keys enabled for an SSID and checks that the key entered by a user attempting to join the network is a valid one. Instead of the hardware itself storing the one key that unlocks it, our service enables multiple keys to be used. The Eleven Key Matching Service (EKMS) is a cloud-based solution …."[46]

94.   As another example, Defendant's '407 Patent asserts that, "[a]t 210 of the process 200, the key matching manager 202 may receive a match request. The match request may be received from the access point of the LAN. For example, the match request may correspond to the match request at 116 of process 100. The match request may include the ANonce value generated by the access point, and frame 2 information provided from the client device (e.g., the SNonce value and/or other frame 2 information). The match request may further include other information needed to determine the PTK, PMK, and/or PSK, such as the MAC address of the client device and/or the MAC address of the access point."[47]

---

[45] Ex. D, Eleven Expands Hardware Integrations for Multifamily Solution, Personal Pass Key (Sept. 6, 2022) at 2.

[46] Ex. E, Unlock a Better Wi-Fi Connectivity Experience for Residents (Aug. 31, 2021) at 3.

[47] Ex. H, '407 Patent at 5:8-18.

KAEMPFER CROWELL
1980 Festival Plaza Drive
Suite 650
Las Vegas, Nevada  89135

95.    On information and belief, the Accused Product performs receiving, by the cloud-based provisioning system, the MIC, the SNonce, and the ANonce, in a manner that satisfies element [1e] of the '884 Patent.

96.    For example, Defendant's '407 Patent asserts that "[a]t 210 of the process 200, the key matching manager 202 may receive a match request. The match request may be received from the access point of the LAN. For example, the match request may correspond to the match request at 116 of process 100. The match request may include the ANonce value generated by the access point, and frame 2 information provided from the client device (e.g., the SNonce value and/or other frame 2 information). The match request may further include other information needed to determine the PTK, PMK, and/or PSK, such as the MAC address of the client device and/or the MAC address of the access point."[48]

97.    As another example, Defendant asserted that "[w]hen a resident device asks to join the network, the on-premise hardware sends the encrypted key to Eleven's cloud-native . . . Key Matching Service (EKMS) which checks the key against a list of authorized keys, granting access only when a match is found–no captive portal required."[49]

98.    On information and belief, the Accused Product performs calculating, by the cloud-based provisioning system, calculated MICs for multiple wireless network access profiles of the plurality of wireless network access profiles, wherein calculating is performed using: the ANonce and the SNonce from the access point and the PSK from a wireless network access profile of the plurality of wireless network access profiles, in a manner that satisfies element [1f] of the '884 Patent.

---

[48] Ex. H, '407 Patent at 5:8-18.

[49] Ex. D, Eleven Expands Hardware Integrations for Multifamily Solution, Personal Pass Key (Sept. 6, 2022) at 2.

99.    For example, Defendant asserted that, "[w]hen a resident device asks to join the network, the on-premise hardware sends the encrypted key to Eleven's cloud-native . . . Key Matching Service (EKMS) which checks the key against a list of authorized keys, granting access only when a match is found–no captive portal required."[50]

100.    As another example, Defendant's '407 Patent states that:

At 116 of the process 100, the access point 104 may send a match request to the key matching service 106. The match request may include the *ANonce* value and some or all of the contents of Frame 2 (e.g., the *SNonce* value) to the key matching service 106. The match request may further include the MAC address of the access point 104, the MAC address of the client device 102, and/or the SSID of the LAN. ***The key matching service 106 may use this information to generate the MIC for each PMK and/or PSK and match the generated MIC to a set of valid keys that are valid for authentication***. As described further with respect to FIG. 2A, the key matching service 106 may allocate the valid keys among multiple computation elements to search for a match with the PMK and/or PSK generated from the ANonce value, Frame 2 information, and/or other information (e.g., the MAC addresses of the access point 104 and/or client device 102, and/or the SSID of the LAN).[51]

101.    On information and belief, the Accused Product performs determining, by the cloud-based provisioning system, that a first calculated MIC for a first wireless network access profile of the multiple wireless network access profiles does not match the received MIC, in a manner that satisfies element [1g] of the '884 Patent.

102.    For example, Defendant asserted that "[w]hen a resident device asks to join the network, the on-premise hardware sends the encrypted key to Eleven's cloud-native . . . Key Matching Service (EKMS) which checks the key against a list of authorized keys, granting access only when a match is found–no captive portal required."[52]

---

[50] Ex. D, Eleven Expands Hardware Integrations for Multifamily Solution, Personal Pass Key (Sept. 6, 2022) at 2.

[51] Ex. H, '407 Patent at 4:3-20 (emphasis added).

[52] Ex. D, Eleven Expands Hardware Integrations for Multifamily Solution, Personal Pass Key (Sept. 6, 2022) at 2.

103. On information and belief, the Accused Product performs determining, by the cloud-based provisioning system, that a second calculated MIC for a second wireless network access profile of the multiple wireless network access profiles matches the received MIC, in a manner that satisfies element [1h] of the '884 Patent.

104. For example, Defendant asserted that "[w]hen a resident device asks to join the network, the on-premise hardware sends the encrypted key to Eleven's cloud-native . . . Key Matching Service (EKMS) which checks the key against a list of authorized keys, granting access only when a match is found–no captive portal required."[53]

105. On information and belief, the Accused Product performs transmitting, by the cloud-based provisioning system, a pairwise master key (PMK) for the second wireless network access profile to the access point in response to determining that the calculated MIC for the second wireless network access profile matches the received MIC, in a manner that satisfies element [1i] of the '884 Patent.

106. For example, Defendant's '407 Patent provides that:[54]

---

[53] Ex. D, Eleven Expands Hardware Integrations for Multifamily Solution, Personal Pass Key (Sept. 6, 2022) at 2.

[54] Ex. H, '407 Patent at Fig. 1 (highlighting added). *See also, e.g.*, *id.* at 4:21-32 ("At 118 of the process 100, the key matching service 106 may send a match result to the access point 104, e.g., an indication of whether a match for the PMK and/or PSK was successfully found among the valid keys. Accordingly, the access point 104 does not need to perform the matching process itself, which is computationally intensive. In some embodiments, the match result at 118 may additionally include the PMK and/or PSK, and/or other information to identify the PMK and/or PSK. Thus, the access point 104 may not need to compute the PMK and/or PSK itself from the ANonce value and SNonce value.").

KAEMPFER CROWELL
1980 Festival Plaza Drive
Suite 650
Las Vegas, Nevada  89135



**FIGURE 1**

107.     On information and belief, the Accused Product performs receiving, by the access point, the PMK from the cloud-based provisioning system, in a manner that satisfies element [1j] of the '884 Patent.

108.     For example, Defendant's '407 Patent provides that:[55]

---

[55] Ex. H, '407 Patent at Fig. 1 (highlighting added). *See also, e.g.*, *id.* at 4:21-32 ("At 118 of the process 100, the key matching service 106 may send a match result to the access point 104, e.g., an indication of whether a match for the PMK and/or PSK was successfully found among the valid keys. Accordingly, the access point 104 does not need to perform the matching process itself, which is computationally intensive. In some embodiments, the match result at 118 may additionally include the PMK and/or PSK, and/or other information to identify the PMK and/or PSK. Thus, the access point 104 may not need to compute the PMK and/or PSK itself from the ANonce value and SNonce value.").



**FIGURE 1**

109.    On information and belief, the Accused Product performs establishing, by the access point, an encrypted communication session with the wireless device using the PMK, in a manner that satisfies element [1k] of the '884 Patent.

110.    For example, Defendant asserted that "[e]ach user has a unique key, even when sharing the same SSID, and network traffic is encrypted separately."[56]

111.    As another example, Defendant asserted that "Eleven has leveraged WPA2 Personal encryption with multiple PSKs to create our Personal Pass Key experience. The beauty of Personal Pass Key is that it makes access networks more closely mirror the at-home Wi-Fi experience without forgoing enterprise-level control and security. Instead, individual users are assigned a unique PSK, select their SSID, enter their PSK, and get connected."[57]

112.    On information and belief, the Accused Product performs granting, by the access point, network access to the wireless device based on the PMK, in a manner that satisfies element

[56] Ex. J, ElevenOS Personal Pass Key Overview at 1.

[57] Ex. G, How to Deliver Home-like Wi-Fi with Enterprise Level Network Control (July 20, 2021) at 3.

KAEMPFER CROWELL
1980 Festival Plaza Drive
Suite 650
Las Vegas, Nevada  89135

[1l] of the '884 Patent.

113.    For example, Defendant asserted that, "[i]nstead of a typical captive portal experience where users enter a username and password, the Personal Pass Key acts as both, securely connecting them to their SSID. Each user has a unique key, even when sharing the same SSID, and network traffic is encrypted separately."[58]

114.    As another example, Defendant asserted that "Eleven has leveraged WPA2 Personal encryption with multiple PSKs to create our Personal Pass Key experience. The beauty of Personal Pass Key is that it makes access networks more closely mirror the at-home Wi-Fi experience without forgoing enterprise-level control and security. Instead, individual users are assigned a unique PSK, select their SSID, enter their PSK, and get connected."[59]

115.    Defendant's infringement is literal, under the doctrine of equivalents, or both.

116.    Defendant has committed infringing acts without authorization, consent, permission, or a license from DISH.

117.    Defendant's infringement has been, and continues to be, willful.  Despite having had knowledge of its infringement, Defendant has continued its infringing activities.

118.    Alternatively, Defendant was willfully blind to the '884 Patent and to its infringement.  Defendant subjectively believed there was a high probability that the Accused Product practiced patented technology, including because Defendant was put on notice of U.S. Provisional Application No. 62/986,255, to which the '884 Patent claims priority and whose disclosure closely matches the operation of the Accused Product.  Defendant nevertheless took deliberate actions to avoid learning of the '884 Patent and/or to avoid confirming infringement.

---

[58] Ex. J, ElevenOS Personal Pass Key Overview at 1.

[59] Ex. G, How to Deliver Home-like Wi-Fi with Enterprise Level Network Control (July 20, 2021) at 3.

119. Despite its knowledge and/or willful blindness, Defendant continued to make, use, sell, offer for sale, import, supply, and/or encourage use of the Accused Product without authorization. Defendant's continued infringement after notice, and its deliberate avoidance of information confirming infringement, render its infringement willful and support an award of enhanced damages under 35 U.S.C. § 284.

120. Defendant will continue to infringe the '884 Patent, causing irreparable harm to DISH for which there is no adequate remedy at law unless enjoined by this Court. Defendant's infringement has caused and continues to cause irreparable harm to DISH in the form of loss of business opportunities, lost sales, loss of market share and loss of goodwill.

121. As a result of Defendant's infringement of the '884 Patent, DISH has suffered and is owed no less than a reasonable royalty under 35 U.S.C. § 284 as a remedy.

122. To the extent an obligation under 35 U.S.C. § 287 exists, DISH has complied with that obligation.

123. Nevertheless, in accordance with 35 U.S.C. § 287, DISH provided notice of infringement to Defendant on June 13, 2025, and licensee RoamingiQ hosts a virtual marking page identifying the '884 Patent in connection with its practicing products.[60]

**PROMOTION, RECEPTION, AND PRAISE OF THE ACCUSED PRODUCT**

124. Defendant's promotion of the Accused Product's features that infringe the Asserted Patents further confirms that both of the Asserted Patents claim inventive concepts.

125. Examples of this promotion include Defendant's article titled "How to Deliver Home-like Wi-Fi with Enterprise Level Network Control" (July 20, 2021), which claims that "[h]istorically, SSIDs and PSKs existed in a 1:1 relationship on WPA2 Personal networks,

---

[60] *See* https://roamingiq.com/about/.

meaning that only one PSK would unlock each SSID," but that "[r]evolutionary new technology now enables a single SSID to have multiple keys."

126. According to Defendant, "WPA2 Personal with multiple passkeys enables access networks of all shapes and sizes to gain more control, offer more security, and improve the user experience without the added complexity or cost that comes with a WPA2 Enterprise network."[61]

127. Defendant identifies security benefits related to its infringement of the Asserted Patents.

128. According to Defendant, "[o]n a typical single PSK network, each device connected can be at risk of being monitored or watched to instigate malicious intent like identity theft or corporate espionage."[62]

129. By contrast, with the Accused Product, "[a] user with the correct PSK only has access to the data and information that they are utilizing."[63]

130. Defendant identifies benefits that improve the functioning of a computer related to its infringement of the Asserted Patents.

131. Defendant asserted that its "Key Matching Service is unique in its ability to handle very large key pool sizes without the high cost of other specialized software or virtualized hardware. What makes this difficult to achieve via the AP or controller is that the PSKs have to be matched while they are encrypted, making it computationally expensive, and thus hard to scale. However, with EKMS, service providers of all sizes can deliver the magic of the Personal Pass

---

[61] Ex. G, How to Deliver Home-like Wi-Fi with Enterprise Level Network Control (July 20, 2021) at 3.

[62] Ex. G, How to Deliver Home-like Wi-Fi with Enterprise Level Network Control (July 20, 2021) at 4.

[63] Ex. G, How to Deliver Home-like Wi-Fi with Enterprise Level Network Control (July 20, 2021) at 4.

Key experience, without the hefty price tag of additional licensing, servers, or gateways." [64]

132.    Defendant claims that "[b]y removing the captive portal, residents are happier and IT staff receive fewer support calls related to portal issues and connecting their browser-less devices."[65]

133.    Defendant's article titled "Unlock a Better Wi-Fi Connectivity Experience for Residents" (Aug. 31, 2021) identifies several additional technical benefits related to the Accused Product:

---

**The Magic of Key Matching**

The magic behind the Personal Pass Key experience is a purpose-built service that stores all keys enabled for an SSID and checks that the key entered by a user attempting to join the network is a valid one. Instead of the hardware itself storing the one key that unlocks it, our service enables multiple keys to be used. The Eleven Key Matching Service (EKMS) is a cloud-based solution that features benefits like:

- **Easy deployment**: Service providers deploy a single end-user experience regardless of hardware platform without adding complexity to their deployment footprint.

- **Hardware-agnostic**: Deploy a single end-user experience over many different hardware platforms without adding complexity.

- **Turnkey SaaS**: Eleven's key matching service is embedded in our cloud platform and processes, including our SLAs–no need to manage or license additional hardware or software.

- **No-hassle scalability**: Robust cloud-native performance and easy site configuration makes Eleven's service as easy to manage at one site as at 1,000.

- **Future-proof**: Device authentication that does not rely on a device's MAC address means aggressive MAC randomization won't impact resident experience. [66]

---

**JURY DEMAND**

134.    DISH demands a trial by jury on all issues so triable.

_____

[64] Ex. E, Unlock a Better Wi-Fi Connectivity Experience for Residents (Aug. 31, 2021) at 4.

[65] Ex. J, ElevenOS Personal Pass Key Overview at 2.

[66] Ex. E, Unlock a Better Wi-Fi Connectivity Experience for Residents (Aug. 31, 2021) at 3-4.

**PRAYER FOR RELIEF**

135.    WHEREFORE, DISH prays for relief, as follows:

A.    Finding that the claims of the Asserted Patents have been infringed by Defendant;

B.    Awarding damages adequate to compensate DISH for the patent infringement that has occurred, including without limitation lost profits and no less than a reasonable royalty, in accordance with 35 U.S.C. § 284, including an assessment of pre-judgment and post-judgment interest and costs, and an accounting as appropriate for infringing activity not captured within any applicable jury verdict;

C.    Awarding DISH an ongoing royalty for Defendant's post-verdict infringement, payable on each product or service offered by Defendant that is found to infringe the Asserted Patents, and on all future products and services that are not colorably different from those found to infringe;

D.    Permanently enjoining Defendant from further infringement;

E.    Providing an award of all other damages permitted by 35 U.S.C. § 284, including increased damages up to three times the amount of compensatory damages found;

F.    Finding that this is an exceptional case and awarding DISH its costs, expenses, and reasonable attorneys' fees incurred in this action as provided by 35 U.S.C. § 285; and;

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

KAEMPFER CROWELL
1980 Festival Plaza Drive
Suite 650
Las Vegas, Nevada  89135

G.     Providing such other relief, including other monetary and equitable relief, as this Court deems just and proper.

DATED this 17th day of June, 2026.

KAEMPFER CROWELL

By:   */s/ Lyssa S. Anderson*
LYSSA S. ANDERSON (Nevada Bar No. 5781)
KRISTOPHER J. KALKOWSKI (Nevada Bar No. 14892)
TRAVIS C. STUDDARD (Nevada Bar No. 16454)
1980 Festival Plaza Drive, Suite 650
Las Vegas, Nevada  89135

RUFFIN CORDELL (*Pro Hac Vice* forthcoming)
cordell@fr.com
ADAM SHARTZER  (*Pro Hac Vice* forthcoming)
shartzer@fr.com
MICHAEL J. BALLANCO  (*Pro Hac Vice* forthcoming)
ballanco@fr.com
FISH & RICHARDSON P.C.
1000 Maine Ave SW, Suite 1000
Washington, DC 20024
Telephone: (202) 783-5070
Facsimile: (202) 783-2331

CHET CAMPBELL (*Pro Hac Vice* forthcoming)
cycampbell@fr.com
FISH & RICHARDSON P.C.
One Marina Park Drive
Boston, MA 02210
Telephone: (617) 542-5070
Facsimile:  (617) 542-8906
***Attorneys for Plaintiff***
***DISH Network L.L.C.***